**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 9:12-cv-81271**

**FORTILINE, INC., d/b/a FORTILINE**
**WATERWORKS, a South Carolina corporation,**

      **Plaintiff,**

**vs.**

**DANIEL B. MOODY, an individual, AVEM**
**HOLDINGS, LLC, a Florida limited liability**
**company, AVEM SUPPLY, LLC, , a Florida**
**limited liability company, and TODD J.**
**WITTERMAN, an individual,**

      **Defendants.**
_____/

**<u>VERIFIED COMPLAINT</u>**

Plaintiff, Fortiline, Inc. ("Fortiline" or "Plaintiff"), by and through its undersigned

counsel, hereby files this Complaint against Defendants, Daniel B. Moody ("Moody"); AVEM

Holdings, LLC ("AVEM Holdings), AVEM Supply, LLC ("AVEM Supply"), and Todd J.

Witterman ("Witterman") seeking injunctive and other relief, and states as follows:

**<u>Jurisdiction and Venue</u>**

1.    This is an action for injunctive relief and for damages in excess of seventy-five

thousand dollars ($75,000.00).

2.    This Court has jurisdiction pursuant to 28 U.S.C §§ 1331, 1332 and 1367.

3.    Venue of this action properly lies in this Court pursuant to 28 U.S.C. § 1391

because the actions giving rise to this Complaint occurred in this judicial district and all

Defendants reside in this judicial district.

## Parties

4.     Plaintiff Fortiline is a South Carolina corporation with its principal place of business located at 7025 Northwinds Dr. NW, Concord, North Carolina 28027.  Plaintiff is licensed to and, in fact, conducts business in the State of Florida.

5.     Upon information and belief, Defendant Moody is an individual residing in Jupiter, Florida.

6.     Upon information and belief, Defendant Witterman is an individual residing in Port St. Lucie, Florida.

7.     Defendants Moody and Witterman are former employees of Plaintiff.

8.     Defendant AVEM Holdings is a Florida limited liability company with its principal place of business in Jupiter, Florida

9.     Defendant AVEM Supply is a Florida limited liability company with its principal place of business in Jupiter, Florida

10.     Defendant Moody is an officer of both AVEM Holdings and AVEM Supply.

11.     Defendant Witterman is an employee of AVEM Holdings and/or AVEM Supply.

### Relevant Background Regarding Fortiline's Operations

12.     Fortiline is in the business of distributing underground utility products for installation in both the public and private sectors.

13.     In the course of its business, Fortiline has developed and maintained confidential information regarding its innovations, software, Trade Secrets, business plans, financial strategies, finances, including, without limitation, information regarding Fortiline's financial condition, results of Fortiline's operations, identities of clients or prospective clients, vendors, referral sources, products under development, acquisition strategies and acquisitions under

consideration, pricing or cost information, marketing strategies, passwords and codes, formulae, patterns, compilations, programs, devices, methods, techniques, and processes (hereinafter collectively referred to as "Confidential Information").  This Confidential Information is highly proprietary, was developed over a substantial period of time, and is the product of great expense and effort.  It is not available to the public or to others in the industry, and would be of great value to Fortiline's competitors.

14.     Fortiline's Confidential Information has been the subject of reasonable efforts to maintain its confidentiality.  Among the methods employed to maintain this confidentiality have been the use of computer passwords; instructing its employees that any and all documents, records, notebooks, plans, models, components, devices, computer software or codes, discs or electronically stored items containing such Confidential Information is proprietary; and providing in its employee handbook and corporate policies that disclosure and use of Confidential Information is prohibited.

**Relevant Background Regarding the Personnel Histories of Moody and Witterman**

15.     Fortiline hired Defendant Moody in 2008 as the International Division Manager, tasked with managing all of Fortiline's international sales.

16.     In 2009, at Moody's request, Fortiline hired Witterman as an inside salesperson, working directly for Moody.  Witterman resigned in January of 2011 but was rehired by Fortiline, at the insistence of Moody, as an Estimator in January of 2012.

17.     Moody and Witterman, as Plaintiff's employees, had access to and direct knowledge of Plaintiff's Confidential Information and Trade Secrets.

18.     Moody and Witterman abruptly resigned on or about November 9, 2012, announcing that they were starting a new venture.

19.     After his resignation from Fortiline, Moody began to openly do business as AVEM Holdings and AVEM Supply, in direct competition with Fortiline.

20.     The Florida Department of State Division of Corporations' records show that Moody actually joined AVEM Holdings on or about March 31, 2011[1] and formed AVEM Supply on October 15, 2012.

21.     On November 7, 2012, an announcement was posted on the AVEM Supply website (www.avemsupply.com) indicating that Witterman was its new VP of Operations.

22.     On or about November 12, 2012, Moody returned his company-owned laptop with all of the data wiped from it.  Fortiline determined that, prior to deleting all of the data and files from the laptop, Moody transferred some or all of the data and files to an external storage device.

23.     Moody also failed to return any of Fortiline's paper files which were in his possession at the time he resigned.

24.     Witterman returned his company-owned laptop with all e-mails from 2012 deleted.

25.     Upon information and belief, both prior to and after resigning from Fortiline, Moody sent e-mails to many Fortiline customers telling them that he was leaving Fortiline and that he was beginning his own, competing, business, AVEM Holdings and AVEM Supply.

26.     After Witterman employment was terminated, Fortiline discovered that Moody solicited Witterman to join Moody in his new venture, and quit his job at Fortiline, while both Moody and Witterman were still employed by Fortiline.

27.     On November 12, 2012, Moody sent the following e-mail to everyone on the proprietary contact list he misappropriated from Fortiline:

---

[1] Prior to March 31, 2011, Moody's wife was the only officer of AVEM Holdings.

**From:** Danny Moody - AVEM Supply [mailto:danny.moody@avemsupply.com]
**Sent:** Monday, November 12, 2012 11:35 AM
**To:** Danny Moody - AVEM Supply
**Subject:** Danny Moody - Introduction to AVEM Supply

Good morning,

Over the past five years, I have had the great privilege of working with so many of you. I wanted to let each of you know that last week, I stepped down from the company I served for those years as international division manager. The exciting news is that myself and a select team of individuals has formed a distributorship model designed to focus on improving the overall material supply experience. AVEM Supply is a distribution company delivering product solutions for: contractors, developers and municipalities operating in the: utility, roadway, sitework and heavy construction industries. We provide products for waterworks, treatment plant, gas, electric, safety, road and equipment. AVEM Supply was founded and operates on four fundamental values: Trust, Strength, Reliability and Integrity. I am excited to continue the relationships that I have made with each of you in this new endeavor. Please feel free to contact me regarding any specific information that we need to review in order to conduct business together.

Below is the contact information for our office. You may also call myself or TJ Witterman directly on our cell phones. Please note that my cell phone # has not changed. **Also note that any previous e-mail addresses that you had for either TJ or myself have been disconnected and will not work.**

New contact information:

| | |
|---|---|
| Office Address: | 1003 Jupiter Park Lane #2 |
| | Jupiter, FL 33458 |
| | |
| Office Phone: | 561-459-1239 |
| Office Fax: | 561-348-2388 |
| | |
| Danny Cell: | 561-719-3433 |
| TJ  Cell: | 561-568-9258 |
| | |
| Danny e-mail: | danny.moody@avemsupply.com |
| TJ e-mail: | tj.witterman@avemsupply.com |
| | |
| Website: | www.avemsupply.com |

We look forward to hearing from each of you soon.

Danny Moody
**President**

**AVEM SUPPLY**
O: 561.459.1239 / C: 561.719.3433 / F: 561.348.2388
www.avemsupply.com

**Fortiline's Loss of Confidential and Vital Business Data to Moody and Witterman**

28.     Both Moody and Witterman erased voluminous data from their laptops before returning them to Fortiline.

29.     Thus, on or about November 15, 2012, Fortiline began to investigate the e-mails, data and files that it was able to access with assistance of its IT personnel, in an effort to determine the extent of the harm caused by Moody and Witterman.

30.     The server directory used by Moody and Witterman is called "International-G" and is housed on the D: Drive of a server at Fortiline's data center in Greensboro, North Carolina.  In October and November of 2012, Moody and Witterman were the only members of the "International-G" group and were the only employees with access to this resource, other than network administrators.

31.     Fortiline determined that a large amount of data had been deleted from its server on or about October 25, 2012.

32.     On November 11, 2012, Fortiline's IT Operations Manager David Burns ("Burns") used a backup tape to find data prior to October 25, 2012 that could be used for file recovery, and determined that the full backup set from October 22, 2012 was the oldest and most complete data set available.  Burns restored that data to a folder called "International-Recovered-10-22-2012".  That recovered folder contains 4,022 files in 1550 folders and amounts to about 858 MB of data.  None of this data appears after October 25, 2012.  The abrupt disappearance of this large volume of data between Monday, October 22nd and Thursday, October 25th, 2012 was

never reported by the Moody or Witterman to anyone in Fortiline's IT Department.  Therefore, it appears to be an intentional destruction, and likely theft, of Fortiline property.

33.     While employed by Fortiline, Moody and Witterman used Microsoft Access Databases to track all of their customers and transactions.  Those files are also substantially missing from Plaintiff's system and appear to have been removed from the server for a considerable period of time prior to October 22, 2012.

34.     Moody and Witterman misappropriated all of Fortiline's information on its international sales, leaving it completely unable to continue that business.

35.     On November 9, 2012, Mike Swedick, Fortiline's Vice President of Sales, sent Moody a text message telling him to return his company car and computer to Fortiline's Port Saint Lucie office.  Swedick also told Moody he needed to know who deleted all the international files from Fortiline's computers.  Moody stated that "[a]ll files are backed up on the hard drive of my computer.  You will have everything that was stored on the RDP server."

36.     When Swedick asked Moody why the files were deleted in the first place, Moody said "those files are simply shipping invoices that are generated out of Mincron.  I did not do it for any other purpose than to move them into the hard drive so everything was in one convenient place.  They are right on the desktop.  Having old shipping documents and letters of instruction are not anything that we are going try to use against anyone.  Also you will find the backup PDFs of my e-mails in the same folder."  However, Fortiline does not have access to any of the files Moody mentioned as everything was wiped from his company laptop twice before it was returned.

37.     In the same conversation, Moody also told Swedick that "[w]hen the final decision was made about 10 days ago, some comments were made about 'taking care' of

information.  I believe that it was due to emotions and irrational thinking.  Rather than allow the temptation to fester, I made the decision to take the server down and store it on my computer to avoid anything else happening that could have been out of my control.  I am fully responsible for pulling the files from the server and I realize that the action looks atrocious. . . .  I take full responsibility for the action but also give you the assurance that nothing was lost.  It is, indeed on the desktop of the computer as a carbon copy."  Upon information and belief, the "final decision" Moody refers to is his decision to leave Fortiline and start his own competitive business.

38.     Not all of the files referenced by Moody in his text messages were on the laptop Moody returned to Fortiline as that laptop had been wiped clean at least twice before being returned.

39.     When Moody was asked to return the list of contact information for Fortiline customers he stated that it was saved on his wife's home network, which he accessed via his iPad, and he would have to ask his wife to download the list and sort out their personal contacts from his business contacts.

40.     Moody eventually sent a portion of this "contact list" to Fortiline that contained only a small fraction of Fortiline's customer information.

41.     After Swedick made a second request for the contact list, Moody sent another list in which many of the contacts' telephone numbers were replaced with Moody's own telephone number.

### Fortiline Discovers Additional Wrongdoing by Moody and Witterman

42.     After Moody and Witterman left the company, their Fortiline e-mail inboxes were forwarded to Swedick.

43. This resulted in the discovery of e-mail threads, dating back to October 18, 2012, wherein Moody and Witterman were asking Fortiline's vendors for prices on a large project in the Bahamas, referred to as Bahama Mar.

44. On November 6, 2012, a company called Island Site Development sent an e-mail to Witterman and Moody at their Fortiline e-mail addresses requesting quotes for a project in the Bahamas - a large Water park at a resort called Bahama Mar.

45. There was no record of this request in any of Fortiline's files, indicating that Moody and Witterman were bidding on this project for their own benefit.

46. After receiving an e-mail from the contractor, addressed to Witterman's Fortiline e-mail address, Swedick forwarded it back to him to let him know Moody was gone from the company. Upon information and belief, Moody was in the Bahamas meeting with this customer and other customers the day before he resigned. The flight Moody took to the Bahamas to meet with these customers was paid for by Fortiline.

47. The requests for prices on the Bahama Mar project total nearly $1.5 million. The total project could exceed $2.5 million when it is finished.

48. Upon information and belief, Moody and Witterman are taking this project for themselves and their companies, AVEM Holdings and AVEM Supply.

49. On November 14, 2012, Swedick received another e-mail sent to Moody and Witterman from CCA Civil Bahamas, LTD.

50. CCA Civil Bahamas, LTD is a Fortiline customer with which Fortiline had done approximately $585,000 of business in 2012.

51. The November 14 e-mail sent by CCA Civil Bahamas, LTD to Moody's Fortiline e-mail sought to confirm shipment of materials. There is no record of this transaction being run

through Fortiline's bid system and the e-mail thread reflects Moody and Witterman communicating with CCA Civil Bahamas, LTD about the shipment beginning on November 2, 2012 – before they left Fortiline, and while being paid by Fortiline.

52.     Swedick also received an e-mail from a freight company, addressed to Witterman, regarding a quote for a project in Saint Lucia – a project for which Fortiline had no record.

53.     Moody also re-routed Fortiline's incoming faxes so that they would be sent to his new e-mail address, rather than his Fortiline e-mail address.

### Fortiline's Legitimate Business Interests

54.     Fortiline has a legitimate business interest in prohibiting Moody from directly or indirectly soliciting Fortiline employees, from divulging Fortiline's Confidential Information and from disparaging Fortiline, both before and after his employment ended.

55.     Fortiline has made significant efforts to protect its legitimate business interests. Those legitimate business interests include protection of trade secrets, protection of confidential business information related to its relationships and goodwill with clients, vendors and referral sources.

56.     Fortiline has suffered and will continue to suffer irreparable harm from Moody's conduct by using the Company's trade secrets and Confidential Information to hamstring Fortiline's business, resulting in the loss of at least one other employee to a competitor. Moody's actions have injured the goodwill associated with Fortiline's business and have affected, and will continue to adversely affect, Fortiline's relationships with its clients.

57.     Moody, Witterman, AVEM Supply and AVEM Holdings are direct competitors of Fortiline and, upon information and belief, have been using Fortiline's Confidential Information unlawfully to compete with Fortiline and continue to do so.

58. The use of Fortiline's confidential information by Moody, Witterman, AVEM Supply and AVEM Holdings has caused and will continue to cause irreparable harm to Fortiline.

59. Moody knowingly, intentionally, and willfully engaged in the following conduct:

 a. directly or indirectly soliciting Fortiline employees;

 b. appropriating and converting for Defendant's own use and for the use of AVEM Supply and AVEM Holdings, Plaintiff's Confidential Information; and

 c. using Plaintiff's Confidential Information for his own benefit, and for the benefit of AVEM Supply and AVEM Holdings, for purposes which might be directly or indirectly detrimental to Plaintiff; and

 d. using Plaintiff's Confidential Information for his own benefit, and for the benefit of AVEM Supply and AVEM Holdings, to solicit Plaintiff's customers.

60. Plaintiff has suffered, and is in immediate danger of continuing to suffer, damages as a direct and proximate result of Moody's wrongful acts described above. There is no adequate remedy at law that might address the irreparable injury caused by Moody's acts.

61. Plaintiff has an urgent need to prevent the unjustified interference with its business relations with its customers and employees, and to recover its confidential business and proprietary information from Defendant to conduct its business.

62. Additionally, Plaintiff has an urgent need to preclude Moody from continuing to use Plaintiff's confidential and proprietary information, for his own benefit or for the financial benefit of AVEM Holdings and AVEM Supply.

63.     Should Plaintiff be required to wait until a full trial on the merits to recover its confidential business and proprietary information, and for Moody to be prohibited from continuing to unlawfully use Plaintiff's trade secrets and valuable confidential business information on his own behalf and on behalf of AVEM Supply and AVEM Holdings, Fortiline will be irreparably harmed because it will continue to lose business, goodwill, and customers to Moody, Witterman, AVEM Supply and AVEM Holdings and others, which may never be recovered.

64.     Therefore, Plaintiff seeks damages as well as Preliminary and Permanent Injunctions requiring that Moody be prohibited from continuing to use Plaintiff's trade secrets and Confidential Information for his benefit and the benefit of AVEM Supply and AVEM Holdings.

65.     Witterman knowingly, intentionally, and willfully engaged in the following conduct:

> a.     appropriating and converting for his own use and for the use of AVEM Supply and AVEM Holdings, Plaintiff's Confidential Information;
>
> b.     using Plaintiff's Confidential Information for his own benefit, and for the benefit of AVEM Supply and AVEM Holdings, for purposes which might be directly or indirectly detrimental to Plaintiff; and
>
> c.     using Plaintiff's Confidential Information for his own benefit, and for the benefit of AVEM Supply and AVEM Holdings, to solicit Plaintiff's customers.

66.     Plaintiff has suffered, and is in immediate danger of continuing to suffer, damages as a direct and proximate result of Witterman's wrongful acts described above.  There is no adequate remedy at law that might address the irreparable injury caused by Witterman's acts.

67.     Plaintiff has an urgent need to prevent the unjustified interference with its business relations with its customers and employees, and to recover its confidential business and proprietary information from Witterman to conduct its business.

68.     Additionally, Plaintiff has an urgent need to prohibit Witterman from continuing to use Plaintiff's confidential and proprietary information, for his own benefit or for the financial benefit of AVEM Holdings and/or AVEM Supply.

69.     Should Plaintiff be required to wait until a full trial on the merits to recover its confidential business and proprietary information, and for Witterman to be prohibited from continuing to unlawfully use Plaintiff's trade secrets and valuable Confidential Information on his own behalf and on behalf of AVEM Supply and AVEM Holdings, Fortiline will be irreparably harmed because it will continue to lose business, goodwill, and customers to Moody, Witterman, AVEM Supply, AVEM Holdings and others, which may never be recovered.

70.     Therefore, Plaintiff seeks damages as well as Preliminary and Permanent Injunctions requiring that Witterman be prohibited from continuing to use Plaintiff's trade secrets and Confidential Information for his benefit and the benefit of AVEM Supply and AVEM Holdings.

71.     Plaintiff has a substantial likelihood of success on the merits of its claims.

72.     Plaintiff will suffer irreparable injury should injunctive relief not be granted.

73.     The potential injury to Defendants, if any, should injunctive relief issue does not outweigh the ongoing injury to Plaintiff should injunctive relief fail to issue.

74.     Issuing injunctive relief will serve the public interest.

75.     Plaintiff has been required to retain an attorney to represent it in this action and has obligated itself to pay the firm of Ogletree Deakins a reasonable fee for its services.

76.     All conditions precedent to the bringing of this action have occurred, been performed, or been waived.

## COUNT I
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS AGAINST ALL DEFENDANTS

77.     Plaintiff incorporates by reference, and as if fully restated herein, the allegations in Paragraphs 1-76 of the Complaint.

78.     This is an action for damages for tortious interference with contractual relationships.

79.     Plaintiff is party to contractual relationships with its customers and vendors.

80.     Defendants have knowledge of Plaintiff's contractual relationships with its customers and vendors.

81.     Defendants intentionally and without justification, wantonly and maliciously interfered, and is interfering, with Plaintiff's contractual relationships with its customers and vendors by his actions as set forth above.

82.     Plaintiff has suffered, and is in immediate danger of suffering, damages as a direct and proximate result of Defendants' tortious interference.

83.     As a result of Defendants' wrongful conduct, Plaintiff has suffered and will suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.      Enjoin Defendants from continuing to interfere with Plaintiff's contractual relationships with its customers and vendors;

b.      Enter judgment in favor of Plaintiff and against Defendants;

c.      Award Plaintiff damages;

d.      Award Plaintiff its costs incurred in prosecuting this action;

e.      Award Plaintiff prejudgment interest; and

f.      Grant such other and further relief as this Court deems just and proper.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS AGAINST MOODY AND WITTERMAN**

84.     Plaintiff incorporates by reference, and as if fully restated herein, the allegations in Paragraphs 1-76 of the Complaint.

85.     This is an action under Florida's Uniform Trade Secrets Act, §§ 688.001-688.009, *Fla. Stat.*, for misappropriation of trade secrets.

86.     While they were employed by Plaintiff, Plaintiff reposed much confidence and reliance in Moody and Witterman, of which Moody and Witterman were aware, and provided Moody and Witterman access to certain trade secrets, including but not limited to: Plaintiff's Confidential Information; pricing information; trade secret information; financial information; corporate information; proprietary business practices; methods of operation; proposals made to clients, or prospective or potential clients; information contained in proposals made to clients or prospective or potential clients; client lists; marketing and sales information; technical expertise; business plans; sales and statistical data; proprietary computer programs; inventions and innovations; product designs and prototypes; information regarding vendors and referral sources; and other additional confidential and proprietary information.

87.     The foregoing information derives independent economic value from not being generally known to the public, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and is and has been the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

88.     Upon information and belief, Moody and Witterman have used and/or disclosed for their own benefit, or for the benefit of AVEM Holdings and AVEM Supply, Plaintiff's trade secrets.

89.     Plaintiff has not given Moody or Witterman implied or express consent to use its trade secrets for their own benefit or the benefit of the other Defendants.

90.     Moody and Witterman know, or have reason to know, that they acquired Plaintiff's trade secrets under circumstances giving rise to a duty to maintain the secrecy and limit the use of such information on behalf of Plaintiff only.

91.     Moody and Witterman have willfully and maliciously misappropriated Plaintiff's trade secrets.

92.     As a result of the unlawful conduct of Moody and Witterman, Plaintiff has suffered and will suffer monetary loss and damage and lose competitive advantages in the marketplace.

93.     Plaintiff's business will be substantially impaired and irreparably harmed if Moody is allowed to continue to use and disclose Plaintiff's trade secrets and valuable confidential business information.

94.     Plaintiff has no adequate remedy at law because, among other reasons, the use of Plaintiff's trade secrets and other valuable confidential business information will result in lost

market share and lost goodwill, and monetary damages that will be difficult, if not impossible, to measure.

95.     Plaintiff reserves the right to seek exemplary damages.

WHEREFORE, Plaintiff respectfully requests that this Court:

     a.     Enter judgment in favor of Plaintiff and against Moody and Witterman;

     b.     Enter a preliminary injunction prohibiting Moody and Witterman from unlawfully using or disclosing Plaintiff's trade secrets;

     c.     Enjoin Moody and Witterman from disposing of any copies of Plaintiff's data, files or information;

     d.     Order Moody and Witterman to account for and pay as damages to Plaintiff all profits and advantages gained from unfair trade practices and unfair competition in misappropriating Plaintiff's trade secrets and Confidential Information;

     e.     Order Moody and Witterman to deliver to Plaintiff all copies of Plaintiff's data, files, trade secrets and Confidential Information;

     f.     Award Plaintiff its reasonable attorney's fees under §688.005, *Fla. Stat.*;

     g.     Award Plaintiff its costs incurred in prosecuting this action; and

     h.     Grant such other and further relief as this Court deems just and proper.

**COUNT III**
**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS**
**RELATIONSHIPS AGAINST ALL DEFENDANTS**

96.     Plaintiff incorporates by reference, and as if fully restated herein, the allegations in Paragraphs 1-76 of the Complaint.

97.     This is an action for damages for tortious interference with advantageous business relationships.

98.     Plaintiff has advantageous business relationships with its customers, vendors and referral sources.

99.     Defendants have knowledge of Plaintiff's advantageous business relationships with its customers, vendors and referral sources.

100.    Defendants intentionally and without justification, wantonly and maliciously interfered, and are interfering, with Plaintiff's advantageous business relationships with its customers, vendors and referral sources by their actions as set forth above.

101.    Plaintiff has suffered, and is in immediate danger of suffering, damages as a direct and proximate result of the tortious interference by Defendants.

102.    As a result of the wrongful conduct by Defendants, Plaintiff has suffered and will suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.      Enjoin Defendants, and anyone acting on their behalf, from continuing to interfere with Plaintiff's advantageous business relationships with its customers, vendors and referral sources;

b.      Enter judgment in favor of Plaintiff and against Defendants;

c.      Enjoin Defendants from disposing of any copies of Plaintiff's data, files or information;

d.      Order Defendants to account for and pay as damages to Plaintiff all profits and advantages gained from unfair trade practices and unfair competition in misappropriating Plaintiff's trade secrets and Confidential Information;

e.     Order Defendants to deliver to Plaintiff all copies of Plaintiff's data, files, trade secrets and Confidential Information;

f.     Award Plaintiff damages;

g.     Award Plaintiff its costs incurred in prosecuting this action;

h.     Award Plaintiff prejudgment interest; and

i.     Grant such other and further relief as this Court deems just and proper.

### COUNT IV
### BREACH OF FIDUCIARY DUTY AGAINST MOODY AND WITTERMAN

103.    Plaintiff incorporates by reference, and as if fully restated herein, the allegations in Paragraphs 1-76 of the Complaint.

104.    Plaintiff and Defendants Moody and Witterman shared a relationship whereby Plaintiff reposed trust and confidence in them, and Moody and Witterman consented to this relationship, undertook such trust and assumed a duty to advise, counsel and/or protect Plaintiff.

105.    By the actions described above, Moody and Witterman have breached their duties to Plaintiff and caused damage to Plaintiff.

106.    Plaintiff has suffered, and is in immediate danger of suffering, damages as a direct and proximate result of the breaches by Moody and Witterman.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.     Enter judgment in favor of Plaintiff and against Moody and Witterman;

b.     Enjoin Moody and Witterman from disposing of any copies of Plaintiff's data, files or information;

c.     Order Moody and Witterman to account for and pay as damages to Plaintiff all profits and advantages gained from unfair trade practices and

unfair competition in misappropriating Plaintiff's trade secrets and Confidential Information;

d.   Order Moody and Witterman to deliver to Plaintiff all copies of Plaintiff's data, files, trade secrets and Confidential Information;

e.   Award Plaintiff damages;

f.   Award Plaintiff its costs incurred in prosecuting this action;

g.   Award Plaintiff prejudgment interest; and

h.   Grant such other and further relief as this Court deems just and proper.

## COUNT V
## CONVERSION AGAINST MOODY AND WITTERMAN

107.   Plaintiff incorporates by reference, and as if fully restated herein, the allegations in Paragraphs 1-76 of the Complaint.

108.   The unauthorized acts of Moody and Witterman described above has deprived Plaintiff of its property permanently or for an indefinite time.

109.   The deprivation is inconsistent with Defendants' ownership interest in the property.

110.   Plaintiff has suffered, and continues to suffer, damages as a direct and proximate result of this deprivation.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.   Enter judgment in favor of Plaintiff and against Moody and Witterman;

b.   Enjoin Moody and Witterman from disposing of any copies of Plaintiff's data, files or information;

c.     Order Moody and Witterman to account for and pay as damages to Plaintiff all profits and advantages gained from unfair trade practices and unfair competition in misappropriating Plaintiff's trade secrets and Confidential Information;

d.     Order Moody and Witterman to deliver to Plaintiff all copies of Plaintiff's data, files, trade secrets and Confidential Information;

e.     Award Plaintiff damages;

f.     Award Plaintiff its costs incurred in prosecuting this action;

g.     Award Plaintiff prejudgment interest; and

h.     Grant such other and further relief as this Court deems just and proper.

**COUNT VI**
**VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT**
**AGAINST MOODY AND WITTERMAN**

111.     Plaintiff incorporates by reference, and as if fully restated herein, the allegations in Paragraphs 1-76 of the Complaint.

112.     The secure data network on which Plaintiff maintained and currently maintains its proprietary, confidential and trade secret information in electronic form is a network of computers used in interstate commerce.  During their employment with Plaintiff, Moody and Witterman were authorized by Plaintiff to use these computers only for the purpose of performing work on behalf of Plaintiff.  Once their employment with Plaintiff ended, Moody and Witterman were no longer authorized to access or use these computers and the electronic information stored therein.

113.     Moody and Witterman were never authorized to transfer Plaintiff's property or its proprietary, confidential and or trade secret information to an external hard drive or other device

to be removed from Plaintiff's premises and maintained by Moody and Witterman or used for the benefit of themselves or any other person or entity.  Nor were Moody and Witterman authorized to transfer Plaintiff's property or its proprietary, confidential and or trade secret information via electronic mail to be maintained by Moody and Witterman or used for the benefit of themselves or any other person or entity.

114.    Moody and Witterman knowingly accessed Plaintiff's computers and/or servers during and following the termination of their employment relationship(s) for the purpose of acquiring Plaintiff's property, including Plaintiff's proprietary, confidential and/or trade secret information, without authorization and/or in excess of their prior authorization to do so.

115.    Moody and Witterman accessed some or all of the contents of Plaintiff's secure data network with the intent to defraud Plaintiff.

116.    By means of the conduct described above, Moody and Witterman furthered their intended fraud and took Plaintiff's proprietary, confidential and trade secret information into their own possession.

117.    By means of the conduct described above, Moody and Witterman intentionally accessed Plaintiff's computers and servers without authorization, and as a result of such conduct, caused damage and loss to Plaintiff.

118.    Moody and Witterman violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4) and 1030(a)(5)(C) by their conduct described above.

119.    Moody and Witterman engaged in the conduct described above for their own personal benefit as well as for the benefit of other entities who are competitors of Plaintiff.

120.    Plaintiff has suffered damage and loss by reason of, and as the proximate result of, Moody and Witterman's conduct in violation of the Computer Fraud and Abuse Act described above, and the value of such loss to Plaintiff exceeds $5,000.00 for a one-year period.

121.    Plaintiff is entitled to injunctive relief to restrain and prohibit Moody and Witterman from further violations of the Computer Fraud and Abuse Act with respect to any computer, server or computer network of Plaintiff and to restrain and prohibit Moody and Witterman from further use of any document, data or information obtained from Plaintiff by their violations of the Computer Fraud and Abuse Act.

122.    Plaintiff is further entitled to recover its damages and losses incurred by reason of Moody and Witterman's violations of the Computer Fraud and Abuse Act, in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.    Enter judgment in favor of Plaintiff and against Moody and Witterman;

b.    Enter a preliminary and permanent injunction prohibiting Moody and Witterman from further violations of the Computer Fraud and Abuse Act with respect to any computer or computer network of Plaintiff and prohibiting them from further use of any document, data or information obtained from Plaintiff by his violations of the Computer Fraud and Abuse Act;

c.    Enjoin Moody and Witterman from disposing of any copies of Plaintiff's data, files or information;

d.    Order Moody and Witterman to account for and pay as damages to Plaintiff all profits and advantages gained from unfair trade practices and

unfair competition in misappropriating Plaintiff's trade secrets and Confidential Information;

e.   Order Moody and Witterman to deliver to Plaintiff all copies of Plaintiff's data, files, trade secrets and Confidential Information;

f.   Award Plaintiff its reasonable attorney's fees;

g.   Award Plaintiff its costs incurred in prosecuting this action; and

h.   Grant such other and further relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment against Defendants for injunctive relief, damages, interest, attorneys' fees and costs, and such other and further relief as this Court deems just and proper.

Respectfully submitted by:

*/s/Amanda E. Ballard, Esq.*
William E. Grob, Esq.
Florida Bar. No. 0463124
E-mail: william.grob@ogletreedeakins.com
J. Robert McCormack, Esq.
Florida Bar No.: 864791
E-mail: robert.mccormack@ogletreedeakins.com
Amanda E. Ballard, Esq.
Florida Bar No. 28808
E-mail: mandi.ballard@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK
   & STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, Florida 33602
Telephone:  (813) 289-1247
Facsimile:  (813) 289-6530
*Attorneys for Plaintiff*

**STATE OF NORTH CAROLINA**

**COUNTY OF** *Buncombe*

## VERIFICATION

I, Michael Swedick, am the VP of Sales for Fortiline, Inc.  I am over eighteen (18) years of age.  I declare under penalty of perjury that the factual allegations contained in the foregoing Verified Complaint are true and correct and that the basis of my knowledge, information and belief is personal knowledge, and information from Fortiline's business records and information shared with me in the course of my business activities.

Fortiline, Inc.

_____

MICHAEL SWEDICK
VP OF SALES

Subscribed to and sworn under oath before me this 2l day of November , 2012

_____ Personally Known.

Diane B Rumfelt
NOTARY PUBLIC,
State of North Carolina

✓ Identification
Produced as Follows: FLDL
S320 550668790

Diane B Rumfelt
Printed Name of Notary
My Commission Expires: 9/14/14

11951913.1 (OGLETREE)